**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

LISA ANN ROGERS,

         Plaintiff,

   - v -              Civ. No. 5:13-CV-1185
                         (RFT)[1]

CAROLYN W. COLVIN, *Acting Commissioner of Social Security*,

         Defendant.

**APPEARANCES:**         **OF COUNSEL:**

OLINSKY LAW GROUP        HOWARD D. OLINSKY, ESQ.
Attorney for Plaintiff
300 S. State Street
Syracuse, New York 13202

SOCIAL SECURITY ADMINISTRATION   DAVID L. BROWN, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER

In this action, Plaintiff Lisa Ann Rogers moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB").[2] Based upon the following discussion, the Commissioner's decision denying Social Security benefits is affirmed.

---

[1] On November 7, 2014, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 19.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 14, Pl.'s Br., & 18, Def.'s Br.

**I. BACKGROUND**

Rogers, born on January 12, 1967, filed an application for DIB on January 26, 2011, claiming an inability to work as of May 2, 2008, due to Grave's Disease and depression. Dkt. No. 8, Admin. Transcript[3] [hereinafter "Tr."] at pp. 18, 139-40, 150, & 154. Prior to that, Rogers had been employed as an administrative assistant and a personal recruiter. *Id*. at p. 155. The disability application was denied on initial review. *Id*. at pp. 75-80. On January 11, 2012, a Hearing was held before Administrative Law Judge ("ALJ") Brian W. Lemoine (Dkt. No. 12, Suppl. Admin. Transcript [hereinafter "Supp. Tr."] at pp. 362-92), who, on January 19, 2012, issued an unfavorable decision finding that Rogers was not disabled (Tr. at pp. 13-28). On July 26, 2013, the Appeals Council concluded that there was no basis under the Social Security Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. Tr. at pp. 1-5. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

**II. DISCUSSION**

**A. Standard of Review**

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325-26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson*

---

[3] The Court notes that the Administrative Transcript provided by the Defendant contains an administrative law judge hearing transcript for a social security claim made by someone other than the Plaintiff in this matter, which has no bearing nor connection to Ms. Rogers. *See* Dkt. No. 8, Admin. Transcript, at pp. 29-72. In light of the sensitive and personal identifying information contained in the transcript of the other claimant's administrative law judge hearing, the Court directs the Clerk of the Court to strike those portions of the Administrative Transcript.

*v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla," it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938).

The ALJ must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); 42 U.S.C. § 405(g). Where the weight of the evidence, however, does not meet the requirement for substantial evidence or a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. § 404.1520. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity,

she is not disabled and the inquiry ends. 20 C.F.R. § 404.1520(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits her physical or mental ability to do basic work activities. *Id.* at § 404.1520(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at § 404.1520(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675 F.2d at 467. Where the claimant has such an impairment the inquiry ceases as she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform her past relevant work despite the existence of severe impairments. 20 C.F.R. § 404.1520(e). If the claimant cannot perform her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. § 404.1520(f).

Initially, the burden of proof lies with the claimant to show that her impairment(s) prevents a return to previous lines of work (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent her from performing work that is available within the national

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. § 404.1520(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

### C. ALJ Lemoine's Findings

Rogers, who appeared without a representative, was the only witness to testify at the Hearing. Supp. Tr. at pp. 362-97. In addition to such testimony, the ALJ had Rogers's medical records consisting of treatment reports and opinions from various treating, reviewing, and/or examining physicians. Tr. at pp. 235-361.

Using the five-step disability evaluation, ALJ Lemoine found that: 1) Rogers had not engaged in any substantial gainful activity since May 1, 2008, the alleged onset disability date; 2) she has severe medically determinable impairments, namely Grave's disease and depressive disorder; 3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4, and she does not have marked restrictions in any of the four Part B psychiatric review technique form categories applicable to mental disorders in section 12.00 of the Listings; 4) she retains the RFC to perform light work, as defined by 20 C.F.R. § 404.1567(b), that consist of "simple, rote tasks," but, because her RFC is limited to unskilled work, she could not perform any past relevant work as an administrative assistant and/or personnel recruiter; but 5) considering her age, education, work experience, and RFC, there nevertheless are jobs that exist in significant numbers in the national economy that Rogers could perform. *Id.* at pp. 20-24.

Plaintiff contends that the ALJ's decision denying benefits should be reversed because the ALJ (1) erroneously determined her RFC as capable of light work, which fails to account for Plaintiff's

"significant and well-documented difficulties interacting with others"; (2) improperly evaluated Plaintiff's credibility; and (3) rendered a determination at Step Five that is not supported by the record and was improperly decided without first consulting a vocational expert ("VE"). *See generally* Pl.'s Br. We address Plaintiff's contentions below. Because we find that each of her arguments relate to the ALJ's assessment of her RFC, we use that determination as a starting point.

### D. Plaintiff's RFC

The Regulations direct the Commissioner to assess a claimant's RFC as a basis for determining the particular types of work the claimant may be able to perform despite the existence of physical and/or mental impairments. *See* 20 C.F.R. § 404.1545(a). In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, her physical and mental abilities, and the limiting effects of all impairments even those not deemed severe. *Id*. at § 404.1545(a)(3).

ALJ Lemoine determined that Plaintiff had the RFC to perform light work, as defined by the Regulations, that consist of simple, rote tasks. Tr. at p. 21. The Regulations define light work as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b).

It does not appear that Plaintiff has any objection to a finding that she could perform the exertional requirements of light work. Instead, it is Plaintiff's contention that the ALJ's RFC finding fails to

account for Plaintiff's difficulties interacting with others. In this regard, Plaintiff asserts that the ALJ should not have discounted the opinions rendered by Dr. L. Meade, a non-examining state agency medical reviewer who rendered an assessment of Rogers based upon her review of the record, and Christina Caldwell, Psy.D., a psychiatrist who consultively examined Plaintiff on April 14, 2011, in conjunction with her disability application. Dkt. No. 14, Pl.s Br., at pp. 5-8.

In his written decision, ALJ Lemoine noted that Plaintiff had a history of a depressive disorder that resulted in mild limitations on her ability to conduct activities of daily living and sustain social functioning; and a moderate restriction for maintaining concentration, persistence, and pace. Tr. at p. 21. As noted by the ALJ, there is substantial evidence in the record supporting this finding, namely,

> [there is] no documentation of any psychiatric treatment; . . . [Rogers testified that she] is required to care for herself and her disabled husband; psychiatrist Caldwell's finding of adequate social skills and overall presentation; . . . [treating physician] Dr. Forbes'[s] opinion [that Rogers was] capable of all activities of daily living; and impairment of attention/concentration and memory abilities as noted by psychologist Caldwell.

*Id*.

The ALJ accordingly found that Rogers could "perform work comprised of simple rote tasks, as would generally be associated with unskilled jobs." *Id*. at p. 22.

Although Dr. Meade, a non-examining consultant, found that Plaintiff presented moderate limitations in sustaining social functioning, the ALJ was at liberty to discount this opinion as it conflicted with the medical record, specifically, the mental status examination performed by Dr. Caldwell and Dr. Forbes's treatment notes. Similarly, the ALJ was entitled to reject Dr. Caldwell's concluding opinion that Plaintiff was limited in her ability to relate adequately to others because such finding conflicted with the doctor's own examination wherein Caldwell reported that, upon examination, Plaintiff's demeanor and responsiveness to questions were cooperative; her manner of relating, social skills, overall presentation, and expressive and receptive language were adequate; and

her eye contact was appropriate. Tr. at pp. 23, 236, & 237. And, as the ALJ observed and noted, during the Hearing, Plaintiff also presented herself appropriately, and her demeanor and responsiveness to questions were cooperative in nature. *Id.* at pp. 22-23 ("[Rogers] related well to the [ALJ] at the hearing . . . . [and] was observed as being well-dressed, well-spoken and polite[.]"). Similarly, Dr. Caldwell's opinion that Plaintiff was limited in her ability to relate adequately to others conflicted with Dr. Forbes's treatment notes as well. Contrary to Plaintiff's supposition, the ALJ was not improperly substituting his opinion for that of medical experts, but was simply weighing the opinion and objective evidence presented to him and resolving any conflicts therein. *See Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) ("Genuine conflicts in the medical evidence are for the Commissioner to resolve."). As the ALJ noted, the record simply did not support Drs. Caldwell's and Meade's findings of moderate limitations. Thus, the Court finds that the ALJ properly explained his reasons for rejecting those portions of Drs. Caldwell's and Meade's opinions that conflict with the examinations and other evidence in the record, and his determination is adequately supported by the record.

In further bolstering her argument that she has moderate limitations in social functioning, Plaintiff draws attention to the fact that her attempt to yield her own recruiting business failed because of her inability to relate well to others. Pl.'s Br. at pp. 5-6. During the Hearing, Plaintiff testified that she was fired from prior employment due to her inability to relate well to others. Supp. Tr. at pp. 382-84. Upon questioning, she revealed that after being fired from her job as an administrative assistant in April 2008, she knew she needed to work and decided to pursue her own business in the recruiting field, but, she "didn't want to waste that time of getting things going and have it just never get off the ground" so her mother stepped in to help. *Id.* at pp. 377-81. In opining as to why the recruiting business ceased, Plaintiff testified that "the economy, kind of, tanked at that time with placements, and

employers were not really willing to bring in contract employees." *Id*. at p. 379. Only after the ALJ questioned her further as to how she was able to work in the recruitment field which required excellent social skills did Plaintiff indicate that she started the business as an attempt to learn to get along with others, but failed because of her limited social skills. *Id*. at p. 390.

Moreover, as explained by the ALJ, Dr. Caldwell's finding that Rogers is limited in her ability to relate adequately with others is simply belied by her own examination observations. Plaintiff's citations to treatment notes from Dr. Forbes, her treating physician, are to no avail because, as noted by the Commissioner, such notes are based on Plaintiff's statements to her doctor describing her symptoms, which alone cannot be conclusive of disability. Social Security Ruling 96-7p, 1996 WL 374186, at *2, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* (S.S.A. 2006) ("[A]n individual's statement(s) about his or her symptoms is not enough in itself to establish . . . that the individual is disabled."). And, many of these treatment notes similarly belie Plaintiff's contentions regarding social difficulties. For example, in March 2008, Plaintiff reported a significant amount of stress at home with her marriage, and indicated to Dr. Forbes that she had previously been on Prozac, which she found helpful "creating less of an 'irritable personality'" so Dr. Forbes put her back on Prozac. Tr. at p. 327. In February 2010, Dr. Forbes's treatment notes reveal that Plaintiff's business was improving and that "helped things" and her medical conditions "appear[ed] to be stable." *Id*. at p. 302. Treatment notes reveal that at her annual exam in October 2010, Rogers had been successful losing weight, had no significant issues with her medication, and only took medication occasionally for anxiety and sleep disorder. *Id*. at p. 299. And, in November 2011, Dr. Forbes noted that Rogers was not disabled, and in terms of social functioning, he assessed that her depression had only begun six months prior, in May

2011. *Id.* at p. 276.

Plaintiff also challenges the ALJ's assessment that her allegations and testimony were not totally credible. Pl.'s Br. at pp. 9-11. A claimant's statements about the persistence, intensity, and limiting effects of symptoms are evaluated in the context of all objective medical evidence, which includes medical signs and laboratory findings. 20 C.F.R. § at § 404.1529(c)(4); *see also* Social Security Ruling 96-7p, 1996 WL 374186, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements* (S.S.A. 1996). In a case where subjective symptoms are identified, "the ALJ has discretion to evaluate the credibility of the claimant and to arrive at an independent judgment, in light of the medical findings and other evidence, regarding the true extent of the [symptom] alleged." *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y 1987). Where the ALJ resolves to reject subjective testimony with regard to symptoms, he "must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his determination is supported by substantial evidence." *Id.* at 608 (citing, *inter alia*, *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1045 (2d Cir. 1984)). In evaluating a claimant's allegations of symptoms, an ALJ must consider several factors set forth in the Regulations including:

(i) [The claimant's] daily activities;
(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;
(iii) Precipitating and aggravating factors;
(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or ha[s] taken to alleviate [his or her] pain or other symptoms;
(v) Treatment, other than medication, [claimant] receive[s] or ha[s] received for relief of [his or her] pain or other symptoms;
(vi) Any measures [claimant] use[s] or ha[s] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning [claimant's] functional limitations and restrictions due

        to pain or other symptoms.
20 C.F.R. § 404.1529(c)(3).

In his decision, ALJ Lemoine provided three specific reasons for discrediting Plaintiff's allegations and testimony. Tr. at pp. 22-23. First, the ALJ noted that Rogers received "scant and solely conservative medical treatment" consisting mostly of medication management, and was not receiving any psychiatric therapy. *Id*. at p. 22. In this regard, the ALJ concluded that "the objective medical documentation is not commensurate with contentions of total disability." Consideration of the medical record as it relates to Plaintiff's subjective allegations as well as the treatment sought by Plaintiff are proper pursuant to Social Security Ruling 96-7p.[5] S.S.R. 96-7p, 1996 WL 374186, at *6-7. Second, the ALJ noted that, with respect to Plaintiff's activities of daily living, she "exhibits a significant degree of functionality[.]" Tr. at p. 22. In support of this finding, the ALJ noted that not only was Rogers capable of caring for herself, but also for her disabled husband, and she was able to engage in her recruiting business during the course of its two years of existence. *Id*. Consideration of these activities was also proper and in accordance with the Regulations. 20 C.F.R. § 404.1529(c)(3)(i). And, third, based upon his observations during the Hearing, the ALJ noted that Rogers "lacked the general physical appearance of a person who might have been experiencing prolonged or severe pain" and "[m]orevoer, she related well to [the ALJ] . . . answering questions promptly and appropriately with no obvious evidence of any memory or concentration difficulties." Tr. at pp. 22-23. While the ALJ is not entitled to rely solely on such personal observations, he is permitted to consider same in assessing a claimant's

---

[5] According to the Regulations, Social Security Rulings ("SSR") are "binding on all components of the Social Security Administration. These rulings represent precedent final opinions and orders and statements of policy and interpretations that [the Social Security Administration has] adopted." 20 C.F.R. § 402.35(b)(1); *see also Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (2000) ("Social Security Rulings are agency rulings published under the authority of he Commissioner of Social Security and are binding on all components of the Administration.") (internal quotation marks and citations omitted).

credibility. S.S.R. 96-7p, 1996 WL 374186, at *8.

Based on all the above, the ALJ found that Rogers had a medically determinable impairment that could reasonably be expected to produce the types of symptoms alleged, but "her statements concerning the intensity, persistence and limiting effects of these symptoms are not fully credible[.]" *Id*. at p. 23. Based upon the Court's review, we find that the ALJ applied the correct legal standards in assessing Rogers's credibility and his determination is supported by substantial evidence. The Court similarly finds that in rendering Plaintiff's RFC assessment, the ALJ employed the correct legal standards and his finding is supported by substantial evidence.

Lastly, Plaintiff exclaims that because the ALJ found she had a non-exertional limitation, namely, that she is limited to jobs that require simple, rote tasks, the ALJ should have called a VE to determine the significance of any erosion of the occupational base. Pl.'s Br. at pp. 11-12.

Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets her burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines ("the Grids"). *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); 20 C.F.R. §§ 404.1569 & 404.1569a. The Grids place claimants with severe exertional impairments[6] who can no longer perform past relevant work into categories according to their RFC, age, education, and work experience (*i.e.*, skilled or unskilled as well as transferability of skills). 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Clark v. Barnhart*, 2003 WL 221397777, at *4-5 (E.D.N.Y. Sept. 16, 2003). Based on these factors, the Grids are dispositive on whether the claimant is disabled or not disabled and proper application thereto will obviate the need for any vocational testing. *Rosa v. Callahan*, 163 F.3d

---

[6] Exertional limitations are strength limitations, which include the ability to sit, stand, walk, carry, push, and pull. 20 C.F.R. § 404.1569a(a)-(b); *see also Zorilla v. Chater*, 915 F.Supp. 662, 667 n.3 (S.D.N.Y. 1996) (citing 20 C.F.R. § 404.1569a(b)).

at 82 ("For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled.").

Exclusive use of the Grids, however, is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations," *i.e.*, a combination of exertional and non-exertional limitations. 20 C.F.R. § 404.1569a(d). "[W]hen significant nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity." *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 127 (D. Conn. 2002) (citing *Bapp v. Bowen,* 802 F.2d at 605). "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by h[er] exertional limitations" such significant diminishment renders sole reliance on the grids is inappropriate. *Id*. at 605-06. "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* at 606 (quoted in *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).[7]

"Mental impairments are generally considered to be nonexertional[.]" Social Security Ruling 85-15, 1985 WL 56857, at *2, *Titles II and XVI: Capability to do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments* (S.S.A. 1985).

---

[7] The Second Circuit arrived at this standard in reliance on sister circuit case law as well as the report accompanying the promulgation of the grids. *See Bapp v. Bowen*, 802 F.2d at 605-06. The promulgation report made clear that nonexertional limitations may have the effect of excluding certain jobs within a particular category, however, in some cases, such exclusions are negligible in that a wide range of jobs exist within the functional level especially in light of the fact that an individual "need not be able to perform each and every job in a given range of work." *Id*. at 606 (quoting 43 FED. REG. 55,349-55,361).

However, based on our finding that the ALJ's assessment of Rogers's RFC was proper, we similarly find that the limits imposed on Rogers's ability to perform jobs that entail simple rote tasks was proper, and given that most jobs classified as Light and Sedentary are categorized as unskilled, there is no basis to argue that her non-exertional limitations would significantly erode the occupational base. *See* Tr. at p. 24 (referencing the Grids). Thus, the ALJ's sole reliance on the Grids was appropriate, and the finding of "not disabled" is upheld.

### III. CONCLUSION

**WHEREFORE**, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **AFFIRMED**; and it is further

**ORDERED**, that those portions of the Administrative Record that contain a transcript of a Hearing that is not related to the Plaintiff herein shall be stricken from the Court's Docket (Dkt. No. 8-2 at pp. 29-72); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date: March 23, 2015
      Albany, New York

                                        Randolph F. Treece
                                        U.S. Magistrate Judge